**SO ORDERED.**

**SIGNED this 07 day of August, 2006.**

                                                                                              LARRY E. KELLY
                                  UNITED STATES CHIEF BANKRUPTCY JUDGE

_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| IN RE: § | | |
| ESTEBAN NUNEZ, § | | CASE NO. 05-61631-LEK |
|       Debtor. § | | Chapter 7 |
| §  | | |
| JOHN CAMPAU, § | | |
|       Plaintiff, § | | |
| § | | |
| v. § | | ADVERSARY NO. 05-6025 |
| § | | |
| ESTEBAN NUNEZ A/K/A § | | |
| STEVE RODRIGUEZ, § | | |
|       Defendant. § | | |

**MEMORANDUM OPINION**

      On April 5-7, 2006 the Court conducted a trial in the above styled adversary proceeding. Although styled as a "Complaint to Deny Discharge," the complaint asserts an action to determine dischargeability of a debt under 11 U.S.C. §§ 523(a)(2)(A),(4) or (6).

      This is a core proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(I). To the extent that any of the issues are related matters, the parties consented to the entry of a final order by this Court. At trial, Plaintiff John Campau ("Plaintiff") and Defendant Esteban Nunez

1

("Defendant") both appeared in person and with counsel.

During trial, Plaintiff admitted into evidence Exhibits 1, 3-9, 11-25, 27-32, 35-43, 40a, 45-46[1]. Defendant admitted into evidence Exhibits 4, 5, 6, 8, 9-11, 13-16, 18-19, 21-22..[2] Raul Ramos, Michael Morris, John Campau, Jesse Jimmy Salas, Brandon Lamar Finnegan, Daniel Davila, Esteban Nunez, Anthony George, and Jesse Rodriguez testified on direct and cross-examination. All parties presented argument for and against the dischargeability request.

After the conclusion of the trial, Plaintiff submitted Closing Arguments and Proposed Findings of Fact and Conclusions of Law, both filed April 28, 2006 (Docs. #67 & 68). Defendant submitted his Summary of Evidence and Findings of Fact and Conclusions of Law on May 17, 2006 (Docs. # 70 & 71). Plaintiff filed a Response to Defendant's pleadings on May 31, 2006 (Doc. #71), and Defendant filed a Response to Plaintiff's pleadings on June 13, 2006 (Doc. #72). After considering all of the evidence received at the trial, as well as the pleadings on file, the following represents the Court's findings of fact and conclusions of law made pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52.

## BACKGROUND

In this suit, Plaintiff John Campau alleges that he and Defendant Esteban Nunez a/k/a Steve Rodriguez had a partnership, established by an oral agreement, to sell used vehicles in Travis County, Texas under the name Austin Auto Consultants. After this alleged partnership operated from rather non-specific dates in early 1998 to late 1999, Plaintiff alleges that Defendant Nunez unilaterally terminated the partnership, left the business, and took with him certain motor vehicles which were owned both by the partnership and by Plaintiff in his sole capacity. He asserts that Defendant failed to account to Plaintiff for profits which he contends were earned by the partnership and for which Plaintiff was not paid. He asserts that Defendant converted motor vehicles owned by the partnership and by Plaintiff, individually, to the Defendant's own use and benefit. He alleges Defendant converted Plaintiff's investment of over

---

[1] Plaintiff's Exhibit 7, sections a, b, c, and d were admitted. Plaintiff's Exhibit 22, only pages 1003 and 1019 were admitted. Plaintiff's Exhibit 29 was conditionally admitted, subject to a later challenge if the information in that exhibit was not obtained from the Plaintiff's computer.

[2] Defendant's Exhibit 8 was admitted for the limited purpose of showing Plaintiff wrote the letter at issue.

$200,000 in the partnership. Plaintiff alleges that Defendant committed fraud and defalcation in his actions against Plaintiff, breached his fiduciary duty to Plaintiff by his acts of self-dealing and other bad acts against the partnership, and converted partnership assets. All of these acts, Plaintiff asserts, should cause all of the debt owed by Defendant to Plaintiff to be nondischargeable under 11 U.S.C. §§ 523(a)(2), (4), and (6).

Defendant asserts that he never entered into any partnership with Plaintiff or that he owes any money to Plaintiff. Defendant contends that he never made any false representations to Plaintiff. Defendant specifically alleges that if any partnership was created to sell used cars under the Austin Auto Consultants name, it was between Plaintiff and Defendant's son, Jesse Rodriguez, and that he was not involved. Defendant also contends that Plaintiff, for his own account, sold cars at the same used car lot location in Austin under the name Car Buyers Consultant, Inc. He asserts that Plaintiff's involvement for his own benefit in the same type of business as the partnership at the same location as the partnership is action inconsistent with the duties of a partner in a partnership of like business activity. Defendant asserts that he has not committed any fraud, breach of fiduciary duty or willful and malicious act or acts of conversion and, thus, he owed no debt to Plaintiff.

## FINDINGS OF FACT

1. Plaintiff alleges he invested the sum of $216,284.50 in the Austin Auto Consultants partnership with Defendant with all but $4982.00 of such investment being by checks drawn on his Car Buyers Consultants, Inc. checking account. Each check was payable to R&A Auto, an entity owned and/or operated by Jessie Rodriguez, the son of Defendant Nunez. [See Plaintiff's Exhibits 24, 25, and 26]

2. Car Buyers Consultants, Inc., was a validly existing corporation during 1998 and 1999, and it was wholly owned by Plaintiff.

3. There is no record of any transfer of the beneficial ownership of the funds allegedly paid by Car Buyers Consultants, Inc. to Plaintiff Campau as an investment or loan or for any other purpose.

4. The only methods by which funds can move from a corporation to an individual are by loan, dividend, or distribution from a sub S corporation.

5. The 1040 income tax return of Plaintiff Campau for 1998 does not show any dividend or

sub S distribution to John Campau from Car Buyer's Consultants, Inc. [See Defendant's Exhibit 6]

6. Plaintiff Campau testified he did not loan himself any money from the corporation.

7. No tax return was filed with the IRS covering the time period at issue in this case for Car Buyer Consultants, Inc.

8. Plaintiff Campau's 1999 1040 income tax return was not introduced into evidence.

9. Plaintiff Campau wrote a letter to Federal District Judge Enslen on July 29, 1999, wherein he stated, " I have a good job as manager of an auto dealership." Plaintiff Campau did not call himself a partner in this letter. Testimony indicated that this letter was sent months after Plaintiff Campau claims the alleged partnership operations in Austin were underway. [See Defendant's Exhibit 8]

10. Plaintiff Campau sent a letter to Jesse Rodriguez on April 4, 2000 demanding an accounting for an alleged partnership with Jesse Rodriguez. Plaintiff Campau did not mention Defendant Esteban Nunez in this letter. [See Defendant's Exhibit 7]

11. Plaintiff Campau had several meetings with a certified public accountant, Daniel Davila, in 1998-1999 to discuss the formalization of his business relationship with Jesse Rodriguez. All but one of the meetings were between Daniel Davila and John Campau alone. During these meetings, Mr. Davila testified that Plaintiff never once mentioned that Defendant Nunez was involved in anyway with the subject business operations in Austin, Texas.

12. The assumed name Austin Auto Consultants was reserved by Jesse Rodriguez before the alleged initial discussions of a partnership occurred with Plaintiff Campau.

13. R & A Auto used a credit line at Community Bank in Waco, Texas for its purchase of automobile inventory. Defendant Nunez was not a signatory on the promissory note at Community Bank which established this line of credit.

14. There is no credible evidence of any investment by Plaintiff Campau individually in Austin Auto Consultants.

15. The entire $216,284.50 claimed to be invested by Plaintiff Campau into a partnership named Austin Auto Consultants was actually paid to R&A Auto. [See, eg., Plaintiff's Exhibit 24]

16. Plaintiff Campau bought vehicles for his personal sales at auto auctions, using the line of credit of R&A Auto. He later repaid R&A for these advances with checks drawn on the bank

account of Car Buyers Consultants, Inc. His "personal inventory" of used cars was also located at and sold from the same lot operated by R & A Autos.

17. Plaintiff Campau did not always repay the full amount he owed to R&A Auto at one time.

18. Plaintiff Campau was substantially behind in repaying R&A for his purchase of personal vehicles during 1999.

19. There is no credible evidence in the record of any false representation by Defendant Nunez to Plaintiff Campau. In fact, from the testimony, the only discussion of a possible deal involving Plaintiff Campau and Defendant Nunez "working together" resulted in Defendant Nunez telling Plaintiff Campau to "talk with Jesse [Rodriguez]."

20. There is no credible evidence that there was an express trust agreement between Plaintiff Campau and Defendant Nunez of which Plaintiff Campau was a beneficiary.

21. There is no credible evidence of actions by Defendant Nunez which had the subjective intent or objective certainty of resulting in harm to Plaintiff Campau.

22. There is no credible evidence of any use or conversion of funds from the alleged partnership by Defendant Nunez.

23. There is no credible evidence of damages allegedly suffered by Plaintiff Campau as a result of any actions of Defendant Nunez.

24. The testimony of Plaintiff's expert witness is not based on a methodology sufficient to produce reliable results. An example of this problematic testimony was the expert's failure to account for the expenses occasioned by the car lot reimbursement of Jesse Rodriguez's daily commute from Waco to Austin and back.

25. The testimony of Plaintiff's expert witness is based on information which was incomplete and lacked reliability.

26. Plaintiff Campau has virtually no records to support his testimony regarding his damages.

27. Plaintiff Campau has virtually no records showing the end sales price of alleged partnership vehicles to end users, notwithstanding the requirement that such records be maintained for official reporting purposes in connection with state tax issues.

28. The credible and uncontested testimony of Jesse Rodriguez reflected that the cost of

operating the car lot at 13265 Research Blvd., Austin, Texas was at least $14,000.00 per month.

29. There is no credible evidence of what the profit the alleged partnership achieved.

30. Plaintiff Campau's testimony under oath as to sums advanced to the alleged partnership is in conflict with his 1998 1040 income tax return which is signed under penalty of perjury. [See Defendant's Exhibit 6].

31. There is no documentary evidence linking Defendant Nunez to a partnership with Plaintiff Campau.

32. There is no written partnership agreement or memorandum setting out the terms of the partnership in writing.

33. Plaintiff Campau and Jesse Rodriguez shared expenses on 13265 Research Blvd., Austin, Texas.

34. There was no credible evidence to establish that Defendant Nunez had any management responsibility or ownership in the entity known as R&A Auto.

35. There was no credible evidence to establish that Defendant Nunez had any management responsibility or ownership in the entity known as Austin Auto Consultants.

36. Plaintiff has not met his burden of proving that a partnership was ever formed between himself and Defendant.

## CONCLUSIONS OF LAW

1. Courts have determined that the party seeking an exception to discharge bears burden of proof as to nondischargeability of the debt. Fields v. Hartford Casualty Insurance Co., 926 F.2d 501 (5th Cir.), cert. denied, 502 U.S. 938 (1991). Here, Plaintiff bears the burden of proof to present evidence showing the debt Defendant owes him should survive bankruptcy. Also, the United States Supreme Court has stated that the plaintiff must prove the exception by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 287 (1991). Thus, Plaintiff Campau must present an amount of evidence showing that is it more probable than not that the factors of the § 523 subsections he has alleged are met.

Plaintiff Campau has a stiff burden to met. A bankruptcy court is prohibited from reading general allegations to find a claim objecting to the dischargeability of a particular debt because "[c]onsistent with the Code's basic purpose of 'reliev[ing] the honest debtor from the weight of oppressive indebtedness and permit[ting] him to start afresh,' . . . exceptions to

discharge are to be construed narrowly." Hickman v. State of Texas, 260 F.3d 400, 404 (5th Cir. 2001) (citations omitted).

2.Defendant did not receive money, property, services, or an extension, renewal, or refinancing of credit, by reason of false pretenses, a false representation or actual fraud committed on Plaintiff regarding the operation of a partnership.

Under 11 U.S.C. § 523(a)(2), a debt shall not be dischargeable in bankruptcy "to the extent" it is "for money ... obtained by ... false pretenses, a false representation, or actual fraud." Archer v. Warner, 538 U.S. 314, 316, 123 S. Ct. 1462, 1465 (2003). Here, Plaintiff cites to § 523(a)(2) in his Amended Complaint, and in his proposed findings of fact, Plaintiff argues Defendant knew his statements were false when made to Plaintiff that they would share the profits 50/50 and that Plaintiff would receive his money from partnership proceeds. However, in Plaintiff's closing arguments, he mentions none of this but instead focuses on his § 523(a)(4) claim that a partnership was formed and that Defendant harmed him by not upholding his partnership duties of giving him an accounting of partnership assets, giving him the appropriate partnership profits, etc. There is insufficient evidence to support an § 523(a)(2) claim.

3.No partnership was formed between Plaintiff and Defendant; thus, Defendant had no fiduciary duty to Plaintiff to support a claim for fraud or defalcation while acting in a fiduciary capacity.

An action under § 523(a)(4) requires a debt to have been incurred "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). "'Defalcation is a willful neglect of duty, even if not accompanied by fraud or embezzlement.'" In re Felt, 255 F.3d 220, 226 (5th Cir. 2001) (quoting Moreno v. Ashworth, 892 F.2d 417, 421 (5th Cir.1990) (stating that "defalcation [while acting in a fiduciary position] is a willful neglect of duty, even if not accompanied by fraud or embezzlement"); see also Schwager v. Fallas, 121 F.3d 177, 184, 185 (5th Cir.1997)). "Thus, willfulness is measured objectively by reference to what a reasonable person in the debtor's position knew or reasonably should have known." Id. (citing Roy v. Gravel, 143 B.R. 825, 828 (W.D. La.1992), aff'd, 983 F.2d 1062 (5th Cir.1993)). "The objective standard charges the debtor with knowledge of the law without regard to an analysis of his actual intent or motive." Id. (Roy, 143 B.R. at 828). There is insufficient evidence to support an § 523(a)(4) claim.

4. Defendant did not commit embezzlement regarding any funds owned by Plaintiff.

"Federal law and not state law controls the meaning of "larceny" and "embezzlement" for § 523(a)(4) purposes. ... Under § 523(a)(4), there is no requirement for the offense of larceny or embezzlement that debtor be acting in a fiduciary capacity." In re Hayden, 248 B.R. 519, 525 (Bankr. N.D. Tex. 2000) (citing 4 Collier on Bankruptcy ¶ 523.10[2] (15th ed. rev.1998)). The Hayden court stated, "Texas bankruptcy courts have found that embezzlement requires a showing of three elements: (1) the debtor appropriated funds, (2) the appropriation was for the debtor's use or benefit, and (3) the debtor did the appropriation with fraudulent intent." Id. (citing In re Patton, 129 B.R. 113, 116 (Bankr. W.D. Tex. 1991); Federal Deposit Insurance Corp. v. Johnson ( In re Johnson), 108 B.R. 129, 133 (Bankr. W.D. Tex.1989)). Thus, embezzlement is the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." Hayden, 248 B.R. at 525 n2. (citing Collier on Bankruptcy ¶ 523.10[2] (15th ed.1999), in turn, citing Black's Law Dictionary (6th ed.1990)). There is insufficient evidence to support an § 523(a)(4) claim for embezzlement.

5. Defendant did not commit larceny regarding any funds owned by Plaintiff.

For larceny, the Hayden court stated that:

> Other than the manner in which the funds come into possession of a party, larceny does not differ from embezzlement. Larceny has been defined as "the fraudulent and wrongful taking and carrying away of the property of another with the intent to convert it to the taker's use and with intent to permanently deprive the owner of such property." Collier on Bankruptcy defines larceny similarly: "Larceny is the fraudulent and wrongful taking and carrying away of the property of another with the intent to convert the property to the taker's use without the consent of the owner."

Hayden, 248 B.R. at 527 (citations omitted).

There is insufficient evidence to support an § 523(a)(4) claim for larceny.

6. Defendant did not commit willful and malicious injury to Plaintiff or Plaintiff's property.

An action under § 523(a)(6) requires a debt to have been incurred "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "Willful" means intentional and "malicious" means without just cause or excuse excuse. Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc., 783 F.2d 480, 486 (5th Cir.1986) (citing Seven Elves, Inc. v. Eskenazi, 704 F.2d 241, 245 (5th Cir.1983)). There is insufficient

8

evidence to support an § 523(a)(6) claim for willful and malicious injury to Plaintiff or Plaintiff's property.

7. Plaintiff Campau has suffered no damages as a result of the acts or actions of Defendant Nunez.

8. Plaintiff Campau is not entitled to attorneys fees in this action.

9. Plaintiff Campau has not met his burden of proving that Defendant Nunez owes him any debt or that the factors required by 11 U.S.C. §§ 523(a)(2)(A),(4) or (6) are present to bar such debt from discharge.

A judgment consistent with this Memorandum Opinion will be entered of even date herewith.

# # #